260 N.J. Super. 217 (1992)
615 A.2d 1259
KIMBERLY HODGES, PLAINTIFF-APPELLANT,
v.
PENNSYLVANIA NATIONAL INSURANCE COMPANY ON BEHALF OF NJAFIUA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1992.
Decided October 19, 1992.
*219 Before Judges ANTELL,[1] DREIER and SKILLMAN.
Jeanette Estremera argued the cause for appellant (Edward S. Kahn, attorney; Jeanette Estremera, on the letter brief).
Thomas E. Brown argued the cause for respondent (Lewis & Wood, attorneys; Thomas E. Brown and Stephanie A. van Manen, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from a summary judgment dismissing her complaint for PIP benefits because her mother's insurance policy was canceled for nonpayment of premiums. The issue in this case concerns defendant's proof that the notice of cancellation was properly mailed.
This matter arises out of a motor vehicle accident which occurred on April 7, 1989 involving the plaintiff, Kimberly Hodges, who was operating a vehicle owned by her mother, Alva L. Hodges. On March 15, 1990, plaintiff filed a complaint against the defendant, Pennsylvania National Insurance Company, for refusal to pay medical bills and property damage compensation. The trial judge heard the motions but reserved decision in order to afford defendant time to produce a pertinent post office receipt. Defendant submitted additional proofs, and the trial court thereupon granted summary judgment for defendant, concluding that defendant's originally-submitted evidence satisfied the applicable statutory requirements for proof of mailing.
*220 Acting as an agent for the New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA or JUA), defendant Pennsylvania National Insurance Company[2] had written an insurance policy to cover plaintiff's mother's vehicle from May 21, 1988 through May 21, 1989. Plaintiff's name appeared on her mother's policy as an additional driver. The mother is the only named insured.
Defendant canceled Alva Hodge's policy on December 16, 1988 for failure to remit a premium payment. Defendant prepared a timely notice of cancellation and claims to have mailed it to Alva L. Hodges by regular mail on November 28, 1988. As proof of its mailing the cancellation notice to Alva L. Hodges, defendant has offered two pages from a November 20, 1988 "JUA Mailing List." The first page lists the name of Alva L. Hodges of 447 Princeton Avenue in Trenton as an insured who was scheduled to be sent a notice of cancellation. The final page bears two November 28 stamps of the Harrisburg-Linglestown Post Office in Pennsylvania and two stamps of postage of $39.00 and $99.75. These two postage stamps together total $138.75. The list claims a "total mailing" of 640 notices.
Plaintiff contends that a mailing of 640 notices at $.25 per piece (the 1988 postage stamp price) should have totalled $160. Because defendant paid only $138.75, plaintiff contends that all of the listed notices may not have been mailed.
The signature of one of defendant's employees appears at the end of the list below a pre-printed certification which reads in full: "I hereby certify that I personally mailed in the U.S. Post Office on the date indicated hereon, a notice of cancellation or non-renewal to the insured, a true copy of which appears above, and at the same time, received a receipt from the U.S. Post Office." The date of November 28, 1988 is stamped above the employee's signature.
*221 Plaintiff also submitted the affidavit of Robert Morgan, Consumer Affairs Representative of the Harrisburg Post Office. Mr. Morgan explained that when twenty or more letters are mailed by certified mail, it is customary for the mailing party to prepare a list and have the list stamped with a legitimate authorized mailing receipt. Mr. Morgan certified that the Post Office stamp affixed to the "JUA Mailing List", described above, is "the legitimate authorized mailing receipt and as such has been properly prepared according to our office." Mr. Morgan makes no comment about procedures for letters sent by regular mail.
Lastly, plaintiff produced the affidavit of Robert E. Troupe, a senior business analyst for defendant. Mr. Troupe stated that defendant implemented the policy of having the Post Office stamp the end of JUA mailing lists at the Post Office's suggestion. Defendant has followed this procedure since April of 1989. Mr. Troupe states that the stamped JUA list upon which Alva Hodge's name appears was properly prepared according to company policy and according to the Post Office's request.
Plaintiff's counsel certified that the Post Office's standard proof-of-mailing procedure differs from defendant's use of a pre-printed mailing list. Plaintiff's counsel claims that the U.S. Postal Service utilizes a "Certificate of Mailing," PS Form 3817, for the purpose of documenting proof of mailing by regular mail. Prior to stamping this receipt, Postal Service employees individually compare the receipt with the item being mailed. These forms are available in advance from the Post Office. Plaintiff's counsel obtained this information from the Lawrenceville, New Jersey Post Office.
After her automobile accident, plaintiff filed for PIP coverage from defendant. Plaintiff certified that she had no knowledge of the policy cancellation prior to defendant's rejection of her PIP coverage. She contends that defendant's cancellation is invalid because it did not satisfy the requirements for proof of mailing stipulated by statute. Plaintiff also asserts that *222 defendant's cancellation is invalid because it did not provide individual notice of cancellation to plaintiff, a person who was named and insured by her mother's policy.[3]
While defendant may or may not be able to prove that it mailed the notice, the question before us is whether there was a bona fide issue of fact before the trial judge that defendant met the statutory requirements for an effective notice. R. 4:46-2.
N.J.S.A. 17:29C-10 specifically enumerates the circumstances under which a notice of cancellation is effective:
No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured and b. the insurer has retained a duplicate copy of the mailed notice which is certified to be a true copy.

[Emphasis added].
An insured need not actually receive a cancellation notice in order for it to be effective, provided that the statutory *223 proof of mailing has been satisfied. Weathers v. Hartford Insurance Group, 77 N.J. 228, 233-234, 390 A.2d 548 (1978) (lack of personal knowledge and inspection of mailing by both Post Office and Insurance Company employees was insufficient to satisfy the more ambiguous requirements of the former N.J.S.A. 17:29C-10 which required only "Proof of mailing"). In order to be effective, notices of cancellation "must be sent in strict compliance with the provisions of N.J.S.A. 17:29C-10." Lopez v. New Jersey Automobile Full Underwriting Association, 239 N.J. Super. 13, 20, 570 A.2d 994 (App.Div.), certif. den. 122 N.J. 131, 584 A.2d 206 (1990) (absence of proof of personal knowledge of mailing by postal employee or insurer employee renders notice ineffective).
N.J.S.A. 17:29C-10 requires the insurer to both (a) provide specific proof of mailing and (b) retain a certified copy of the cancellation notice. Because defendant has retained a certified copy of the notice, we can limit our inquiring to whether defendant's proffered evidence of mailing satisfies the statutory requirements for a "date stamped proof of mailing."
As recited above, defendant submitted a master JUA list to the post office which included hundreds of names and addresses, including the name and address of plaintiff's mother. Defendant then obtained a dated post office stamp on this master list. Defendant also submitted a certification that this procedure was standard in its office and that it implemented this procedure at the request of postal authorities. The trial court ruled that this "mailing list, receipted by the Harrisburg, PA post office, constitutes a `date stamped proof of mailing' as required by N.J.S.A. 17:29C-10."
Defendant's actions arguably satisfy the textual dictates of the statute because defendant did receive a dated post office stamp on its mailing list. But was this stamp proof of payment of $138.75 in postage or was it proof of mailing? We see an ambiguity.
*224 Our courts have interpreted the statute to require a precise proof of mailing, usually the official "U.S. Postal Service Certificate of Mailing."[4] In Celino v. General Accident Insurance, 211 N.J. Super. 538, 512 A.2d 496 (App.Div. 1986), this court ruled that this specific postal certificate of mailing satisfied the statute's proof of mailing requirement. Celino at 540-541, 512 A.2d 496 (determining that the insurer's notice was ineffective because insurer failed to retain a duplicate copy of the notice, thereby violating part (b) of the statute). At least three times in our Celino opinion, we identified proper proof of mailing as being the official Postal Service Certificate of Mailing.[5]
*225 Similarly, in Needham v. N.J. Insurance Underwriting Association, 230 N.J. Super. 358, 363, 371, 553 A.2d 821 (App.Div. 1989), we ruled that statutory proof of mailing consists of obtaining the official postal service certificates of mailing. Although we there found for collateral reasons that the insurer had insufficient proof of mailing, we deemed the certificates of mailing the proper form of evidence. Needham at 371, 553 A.2d 821. A brief quotation from Needham illustrates the office process for filing the certificate.
[Insurer's employee] put stamps on the certificates of mailing and handed the certificates and the envelopes containing the notices to the mail clerk who was responsible for carrying the certificates and envelopes across the street to the post office. The mail clerk returned a short time later and gave [the employee] the postmarked certificates of mailing. [The employee] attached these certificates to the office copy of the notice of cancellation and made a notation of the time of the office copy.

[Id. at 363, 553 A.2d 821.]
There is also some evidence in the legislative history of N.J.S.A. 17:29C-10 to suggest that the Act was revised into its present form with the specific purpose of requiring the official Postal Service Certificate of Mailing, even though the statutory language is not this explicit. In 1978, the Supreme Court in Weathers v. Hartford Insurance Group, 77 N.J. 228, 390 A.2d 548 (1978), had challenged and partially redefined the law relating to effectiveness of notices of cancellation. Id. at 234, 390 A.2d 548. The Court specifically mentioned the official postal Certificate of Mailing as proper evidence of mailing, although insufficient when submitted without other evidence of mailing procedures. Id. at 235, 390 A.2d 548.
*226 In Celino we stated that we "regard the 1980 amendment of N.J.S.A. 17:29C-10 [current form] as a direct legislative response to the practical problems engendered by Weathers." 211 N.J. Super. at 542, 512 A.2d 496. A Statement of the Senate Labor, Industry and Professions Committee endorsing the bill explained,
A recent court decision, Weathers v. Hartford, argued in the Supreme Court on April 24, 1973, cast[s] some doubt on the sufficiency of the proof of mailing requirement [of the old N.J.S.A. 17:29C-10]. This bill is designed to make the proof of mailing requirement more explicit.
[Senate Labor, Industry and Professions Committee Statement to Assembly, No. 1418 L. 1980, c. 165].
Similarly, the Governor's statement upon signing the bill indicates the intention of requiring the official Certificate of Mailing. On December 11, 1980, the Governor announced the signing into law of N.J.S.A. 17:29C-10 and interpreted the bill as requiring, "that an insurer send a notice of cancellation ... by regular mail, but only if the insurer obtains a Postal Service proof of mailing certificate and the insurer has retained a true, certified copy of the mailed notice." Statement from Office of the Governor, December 11, 1980, A-1418 (emphasis added).
Thus the statute could be read to require the official Certificate of Mailing as the only acceptable "date stamped proof of mailing." We do not, however, make such a determination. But even if we accept equivalent proof, defendant's proof of payment of postage and employee's certification fall far short of the quality of proof inherent in an official post office certificate. A Certificate of Mailing entails individual review of letters and addresses by a postal employee; defendant's system entails only a self-serving cursory verification of a list of 640 names and addresses. Particularly disturbing about defendant's proof is the fact that defendant only paid $138.75, enough money for posting only 555 letters at $.25 per letter, yet the list claims 640 total mailings. Defendant does not account for this discrepancy of eighty-five notices printed on the master list but not accounted for in postage.
*227 We do not hold that only the official post office certificate will satisfy N.J.S.A. 17:29C-10. The particular form is not a talisman, the absence of which precludes a finding that the notice was mailed. But the statute must be satisfied. "No written notice of cancellation ... shall be effective unless ... the insurer has obtained from the Post Office Department a date stamped proof of mailing" (N.J.S.A. 17:29C-10), is strong language. It does, however, permit the insurer to prove by extrinsic evidence that the date stamped proof of payment of $138.75 was in fact the post office's proof that the letter to plaintiff's mother was mailed on November 28, 1988. This necessarily requires additional proof that a post office employee checked each name and address on the list against the envelopes being mailed. The deficient postage makes this requirement vital.
Because defendant's present proofs are insufficient to establish compliance with the statute, there exist unresolved issues of fact. We therefore find that the trial court erred in granting summary judgment on the ground that defendant's proof and mailing procedure constitutes a "date stamped proof of mailing" as required by N.J.S.A. 17:29C-10.
Reversed and remanded for further proceedings.
NOTES
[1] Judge Antell did not participate in oral argument, but has with the consent of counsel been added to the panel deciding the matter.
[2] At oral argument the parties acknowledged that the JUA is the sole potentially responsible defendant. Pennsylvania National has no individual liability.
[3] N.J.S.A. 17:29C-10 provides, in relevant part, that a notice of cancellation must be "sent by an insurer to an insured. ..." (emphasis added). N.J.S.A. 17:29C-5 makes it clear that the notice is to be sent to the "named insured." N.J.S.A. 39:6A-2(g) defines a "named insured" as "the person or persons identified as the insured in the policy and, if an individual, his or her spouse...." (emphasis added).

Plaintiff's mother's name, Alva L. Hodges, appears in full with complete address in the policy under the heading "named insured" on the initial page of the policy, and again at the top of each policy page. Plaintiff's name appears in her mother's policy in the "Coverages" section listed only as "Kimberly" next to the designation, "Driver No. 2." Thus, although plaintiff is insured under her mother's policy, as would be any driver operating the car with the mother's permission, only the mother is the titled "insured" on the policy.
Plaintiff cites Lumbermens Mutual Casualty Co. v. Carriere, 170 N.J. Super. 437, 450, 406 A.2d 994 (Law Div. 1979) as support for the proposition that anyone named in a policy should receive notice of cancellation. Lumbermens deals with notice to a husband and wife, a situation dealt with specifically by N.J.S.A. 39:6A-2(g). Because plaintiff is not the spouse, but the daughter of the policy's "insured," Lumbermens is inapplicable.
[4] This form existed in 1989 as "PS Form 3817," a copy of which was supplied by defendant. As the notice in this case preceded 1989, there is some question whether the same notice existed then. The references to the similar notices on earlier dates discussed infra arguably should set this issue to rest. The proof form reads:

[5] (1) "As proof of mailing ... defendant also annexed to its trial brief photocopies of the post office certificates of mail forms, one for each of the addressees and each bearing the [local] post office date stamp...." Celino at 540, 512 A.2d 496 (emphasis added).

(2) "[The first statutory] condition was met here by reason of the date-stamped certificate which defendant obtained." Id. at 541, 512 A.2d 496 (emphasis added).
(3) "[P]roper mailing of a particular notice could not be established by evidence consisting only of a certificate of mailing ... [but also required retention of a certified copy of the notice]." Id. 211 N.J. Super. at 542, 512 A.2d 496 (explaining the Weathers opinion) (emphasis added).