719 A.2d 1268

PUBLIC SERVICE ELECTRIC & GAS, PLAINTIFF–RESPONDENT, v. JEFFREY P. UPHOLD, DEFENDANT–RESPONDENT, AND PRUDENTIAL INSURANCE COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 28, 1998—Decided November 19, 1998.

Before Judges LANDAU, BRAITHWAITE and WECKER.

*Robert A. Auerbach*, attorney for appellant (*Randi S. Greenberg*, of counsel and on the brief).

*Beattie Padovano*, attorneys for respondent, Jeffrey Uphold (*Gregg A. Padovano*, of counsel and on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Defendant Prudential appeals from a summary judgment declaring that it owes coverage to defendant Jeffrey Uphold because its attempt to cancel an automobile insurance policy issued to

Uphold was ineffective.[1] Summary judgment was simultaneously entered against Uphold in favor of plaintiff Public Service Electric & Gas on its suit against him for damages resulting after his automobile collided with a PSE & G utility pole. PSE & G's claimed damages were $4,620.20.[2] Prudential denied coverage for the March 22, 1996, accident, claiming that it mailed a notice of cancellation to Uphold on February 16, 1996, effective March 6, 1996. If Prudential's cancellation was effective, there was no insurance in force on the date of this accident.

The only issue addressed by the parties on this appeal is whether Prudential's proofs complied with the statutory requirement for effective cancellation of an automobile insurance policy pursuant to *N.J.S.A.* 17:29C–10. If that were the determinative issue, we would affirm the judgment, because Prudential's proofs do not comply with the statute. However, because Uphold never denied receiving Prudential's notice of cancellation, either in his pleadings or on the cross-motions for summary judgment, there is no material dispute of fact as to receipt. We conclude that the statute does not control. We therefore reverse.

■ In support of Uphold's motion for summary judgment, his attorney submitted his own certification, attaching copies of Prudential's "cancellation documents" and excerpts of the deposition of Prudential's representative. Uphold did not submit his own certification denying receipt of the notice of cancellation, and the record reveals no denial by Uphold that he actually received the notice. None of the parties addresses that fact before us.[3]

---

[1] Uphold's motion for summary judgment on its crossclaim for declaratory relief was granted, and Prudential's cross-motion for summary judgment was denied.

[2] We are informed by counsel for Prudential that $4,620.20 has been stipulated to be plaintiff's damages.

[3] Uphold was represented at trial "at the request of and for the protection of the Unsatisfied Claim and Judgment Fund. . . ." The Fund itself is not a party and has not sought to intervene in this case. Nor does the record provide any

We explained in *Pawlick v. N.J. Auto. Full Ins. Underwriting Ass'n*, 284 *N.J.Super.* 629, 666 *A.*2d 186 (App.Div.1995), that under *Celino v. Gen. Accident Ins. Co.*, 211 *N.J.Super.* 538, 512 *A.*2d 496 (App.Div.1986),

The provisions of *N.J.S.A.* 17:29C–10 are designed to insure that named insureds receive appropriate notice of cancellation. Subsequent to the 1980 amendment to the statute, an insurer could obtain summary judgment as a matter of law on that issue if the insurer could show strict compliance with the statutory requirements. *Celino v. General Acc. Ins.*, 211 *N.J.Super.* 538, 542–43, 512 *A.*2d 496 (App.Div. 1986). An insurer's proof of compliance with the requirements of the statute is necessary *"in the face of an insured's denial of receipt ..."* of the notice of cancellation. *Id.* at 542, 512 *A.*2d 496. *However, where the insured has not denied receipt of the cancellation notice, strict compliance with the statute is not required unless the insured can show that prejudice resulted from the insurer's noncompliance.* *Lilly v. Allstate Ins Co.*, 218 *N.J.Super.* 313, 325, 527 *A.*2d 903 (App.Div.1987). There is no allegation in this record that [the insured] failed to receive [the insurer's] notice of cancellation. Thus, we find it unnecessary to decide whether [the insuror's] documentation of its cancellation mailing methods satisfied the strict requirements of the statute.

[*Pawlick*, 284 *N.J.Super.* at 634, 666 *A.*2d 186 (emphasis added).]

As in *Pawlick*, we "find it unnecessary to decide whether [Prudential's] documentation of its cancellation mailing methods satisfied the strict requirements of the statute." *Id.*

In *Celino* coverage was sought on behalf of a person who was killed in the accident. Nevertheless, her mother certified to the contents of what she described as a meticulously maintained insurance file, which contained the insuror's "notice of premium refund," 211 *N.J.Super.* at 540, 512 *A.*2d 496, but no cancellation notice.[4] In addition, the loss payee, which was entitled to notice, had written to the insuror that its file contained " 'no record ... of the cancellation....' " *Id.* Thus a genuine dispute was presented

---

explanation for the absence of a certification from Uphold. We recognize the public interest potentially involved if a defendant cannot be located to obtain information (and a certification) with respect to receipt of a notice of cancellation. We therefore do not foreclose intervention by the Fund, in an appropriate case, or an argument in such a case that its inability to dispute receipt of notice does not excuse the insuror from compliance with the statute.

[4] Cancellation in *Celino* had been attempted on the basis of an unspecified failure to meet underwriting standards. *Id.* at 539, 512 *A.*2d 496.

with respect to receipt, and compliance with the statutory requirements for effecting cancellation by means of a mailed notice was required.

■ Because compliance with *N.J.S.A.* 17:29C–10 is apparently still not universal, *see, e.g., Valley Nat'l Bancorp. v. American Motorists Ins. Co.,* 316 *N.J.Super.* 152, 158–59, 719 *A.*2d 1028 (1998), we choose to explain the defects in Prudential's proofs. The statute reads, in pertinent part:

No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured and b. the insurer has retained a duplicate copy of the mailed notice which is certified to be a true copy.

The statute "clearly prescribes two conjunctive conditions for effective notice of cancellation. . . ." *Celino,* 211 *N.J.Super.* at 541, 512 *A.*2d 496. First is the manner of delivery, which was met here by the date-stamped certification of mailing from the Post Office. *See Ward v. Merced,* 277 *N.J.Super.* 590, 650 *A.*2d 10 (App.Div. 1994), *certif. denied,* 140 *N.J.* 275, 658 *A.*2d 299 (1995). We reject Uphold's contention that that certification is ineffective because the Post Office stamp appears only on the last of the multi-page list of addressees, and not on the page where his name and address appears. *Hodges v. Pennsylvania Nat'l Ins. Co.,* 260 *N.J.Super.* 217, 615 *A.*2d 1259 (App.Div.1992), upon which Uphold relies, is distinguishable. There we rejected an in-house certification of mailing that was unreliable on its face, because the amount of postage listed was insufficient to cover the number of addresses.

■ The second condition prescribed by the statute is that the insurer "must have retained a duplicate copy of the mailed notice which is certified to be a true copy." *Celino,* 211 *N.J.Super.* at 541, 512 *A.*2d 496. Judge Pressler further explained the certification essential to meeting that condition:

As we therefore construe the statutory condition of a retained certified duplicate copy, it is designed to ease the carrier's proof of mailing burden imposed by *Weathers* [*v. Hartford Insurance Group*, 77 *N.J.* 228, 234–36, 390 *A.*2d 548 (1978) ] by providing it with a simple, expedient and effective alternative to reliance on standard practice in sending notices. This alternative is its retention of a duplicate copy of the notice, certified to be a true copy. But as we understand the intent of the statute, *this mechanism requires that the duplicate be certified as a true copy contemporaneously with preparation and mailing of the original.* The whole point of the requirement is to permit a clerical employee or other custodian of the business record to testify that the file copy is known to be a true copy of the mailed document *because the person mailing it so certified at that time. The added weight of the evidence thus afforded to the file copy is therefore clearly dependent on a contemporaneous certification.* A certification made later would be hardly more than an in-house version of standard-practice proof.

[*Celino*, 211 *N.J.Super.* at 543, 512 *A.*2d 496 (emphasis added).]

The second statutory condition would require us to consider the adequacy of both the copy that Prudential claims to have retained, and the Prudential employee's certification that the retained duplicate is in fact a true copy. The proofs are inadequate as to both aspects of that second condition—the retained copy.

It is unclear from the deposition testimony of Prudential's witness, Lorrie Reynolds,[5] that the retained copy she found in the company's file for Uphold was a copy generated contemporaneously with the notice allegedly mailed to Uphold, and not a subsequently generated copy. It is also plain from Reynold's testimony that the date and the signature on the certification of the "true" copy were affixed at different times, by different people, and that at least the date was entered a day or more after the date stamped by the post office on its certification of mailing. As *Celino* further informs us,

At the very least, the motion should have been supported by an affidavit of an employee of the company who could attest that the copy of the notice was in fact a copy of the notice actually mailed to decedent ... that the notice[ ][was] mailed in [an] envelope[ ] corresponding to the post office certificate[ ], and that the address[ ][was] correct. These are not merely formal requirements. They go to the heart of procedural due process.

[211 *N.J.Super.* at 544, 512 *A.*2d 496.]

---

[5] Reynolds herself testified from her knowledge of general procedures and not from personal knowledge of the specific documents in issue.

The motion judge therefore correctly concluded that the "written notice of cancellation" does not meet the requirements of *N.J.S.A.* 17:29C–10.

■ Nevertheless, Uphold's silence leaves no genuine dispute of fact with respect to either his actual receipt of the notice, or prejudice resulting from Prudential's non-compliance with the statutory procedure. Proof of mailing is permitted as a substitute for proof of receipt. Where receipt is not disputed, as here, the insuror's failure to comply with the statutory procedure for proof of mailing is not dispositive.

We reverse and remand for further proceedings consistent herewith.