O'NEILL v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 105412. Submitted December 14, 1988, at Lansing. Decided February 23, 1989.

John O'Neill leased an automobile from Ford Motor Credit Company and on August 6, 1984, obtained a six-month policy of no-fault insurance for the automobile from Auto Club Insurance Association. Under the policy, O'Neill was the principal named insured and Ford was endorsed as an additional insured. The policy premium was payable in four installments, with the first payment on the date of issue and a payment in each of the three months thereafter. O'Neill failed to make the September, 1984, payment and on September 19, 1984, ACIA sent O'Neill a notice of cancellation informing him that the policy would be canceled unless payment was made by October 8, 1984. On October 22, 1984, ACIA sent O'Neill a notice confirming that the policy was canceled on October 8, 1984. On November 5, 1984, O'Neill was injured in an accident involving the automobile. ACIA initially rejected a claim made by Ford for the damage to the automobile, but settled the claim when it could not prove that it had sent Ford a notice of cancellation. ACIA rejected O'Neill's claim for personal injury protection benefits. O'Neill then brought an action in Branch Circuit Court against ACIA, seeking payment of the benefits. The court, Michael H. Cherry, J., granted summary disposition in favor of defendant, ruling that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law. Plaintiff appealed, claiming that the policy remained in force in the absence of a notice of cancellation to Ford.

The Court of Appeals held:

There was no valid policy of insurance in effect as to plaintiff on the date of the accident since plaintiff received a notice of cancellation consistent with the provisions of the policy relating to cancellation for nonpayment of premium and in compliance with MCL 500.3020; MSA 24.13020, which requires poli-

REFERENCES

Am Jur 2d, Insurance §§ 387-398.

Actual receipt of cancellation notice mailed by insurer as prerequisite to cancellation of insurance. 40 ALR4th 867.

cies of casualty insurance to provide for ten days' written notice to insureds prior to cancellation by insurers. None of the public policy considerations underlying MCL 500.3020; MSA 24.13020 justifies treating the policy in this case as being in force as to both insureds merely because notice of cancellation may not have been given to Ford.

Affirmed.

INSURANCE — NO-FAULT — CANCELLATION OF POLICY — NOTICE — PRINCIPAL NAMED INSUREDS — ADDITIONAL INSUREDS.

A policy of no-fault automobile insurance naming a lessee of an automobile as the principal named insured and the lessor-owner of the automobile as an additional insured may be effectively canceled as to the principal named insured for nonpayment of premium where cancellation is preceded by ten days' written notice of cancellation to the principal named insured regardless of whether notice of cancellation was given to the additional insured (MCL 500.3020; MSA 24.13020).

*Patrick K. Rocchio,* for plaintiff.

*John A. Lydick,* for defendant.

Before: SHEPHERD, P.J., and MURPHY and T. GILLESPIE,* JJ.

SHEPHERD, P.J. Plaintiff John O'Neill appeals as of right from an order denying his motion for partial summary disposition under MCR 2.116(C)(10) and granting defendant Auto Club Insurance Association's countermotion made on the same basis. The court ruled that plaintiff was not entitled to recover personal injury protection benefits from defendant because the no-fault policy was properly canceled as to plaintiff for failure to pay premiums prior to the time of plaintiff's motor vehicle accident. We affirm.

The underlying facts are not in material dispute. On August 6, 1984, defendant issued a six-month automobile insurance policy to plaintiff. The in-

* Circuit judge, sitting on the Court of Appeals by assignment.

sured vehicle was actually owned by the Ford Motor Credit Company which then leased the vehicle to plaintiff. As the principal named insured of the policy, plaintiff agreed to pay premiums in exchange for the policy. Ford Motor was endorsed on the policy as an additional insured.

Plaintiff paid the first of four monthly installments at the time of issuance, with the three remaining payments due on the same date in each succeeding month. When plaintiff did not pay the September payment, defendant sent a cancellation notice on September 19, 1984, stating that the policy would be canceled on October 8, 1984, if payment was not then made. According to plaintiff, he did not make the September payment because he understood from oral representations made by unidentified agents of defendant that he could pay bimonthly and could make a double payment in October. However, plaintiff admitted in his deposition testimony that he was billed monthly, that he did not make the payment due in September, and that he was aware of the cancellation notice. Nevertheless, plaintiff failed to make any payment in October and, on October 22, 1984, was sent a notice confirming that the policy was canceled on October 8, 1984.

On November 5, 1984, plaintiff was injured in an accident while operating the vehicle. The lessor, Ford Motor, filed a claim for its collision loss. Defendant's position was that it had no liability on the policy because it had sent Ford Motor notice of the cancellation, but settled the claim with Ford Motor because it did not have sufficient documentation to prove that it gave notice. Plaintiff filed a separate claim for personal injury protection benefits. The claim was denied because plaintiff was sent notice of cancellation.

Plaintiff then commenced this suit to recover

personal injury protection benefits and in May, 1987, moved for partial summary disposition under MCR 2.116(C)(10). For purposes of the motion, plaintiff did not claim any deficiency in the notice of cancellation issued to him. Rather, plaintiff sought summary disposition on the basis that the policy was still in force because the lessor, Ford Motor, allegedly was not given notice of the cancellation. Under plaintiff's view of the policy, the vehicle was still insured and plaintiff was still an "insured person" for purposes of personal injury protection benefits. Defendant filed a countermotion, arguing that it did not matter whether Ford Motor received a notice of cancellation because the policy was properly canceled as to plaintiff. The court ruled in favor of defendant, holding that there was no valid policy of insurance in effect as to plaintiff on the date of the accident because plaintiff received the requisite notice of cancellation. We agree with the trial court.

Plaintiff's argument is essentially that one unified policy was issued and, hence, it cannot be canceled until all named insureds in the policy are given notice of its cancellation. We disagree.

Policies of insurance are much the same as other contracts. They are matters of agreement between the parties and the task of the courts is to determine what the agreement was and to enforce it accordingly. *Murphy v Seed-Roberts Agency, Inc,* 79 Mich App 1, 7; 261 NW2d 198 (1977). In construing the contract, the courts will look to the language used and the context to determine the purpose sought to be achieved. The language will be given its ordinary and plain meaning, and not a technical or a strained construction. *Wilson v Home Owners Mutual Ins Co,* 148 Mich App 485, 490; 384 NW2d 807 (1986), lv den 425 Mich 876 (1986).

At the same time, however, the insurance business is affected with a public interest, *Dearborn Nat'l Ins Co v Comm'r of Ins,* 329 Mich 107, 118; 44 NW2d 892 (1950), and public policy considerations may lead the courts to void attempted cancellations otherwise permitted by the contract. *Murphy, supra,* p 14. The insurance laws governing the particular policy are liberally construed in favor of policy holders, creditors and the public. *Lease Car of America, Inc v Rahn,* 419 Mich 48, 55; 347 NW2d 444 (1984).

Here, we are presented with an insurance policy in which plaintiff, as the principal named insured, expressly agreed to pay premiums in exchange for the policy. The policy's general conditions provided:

10. CANCELLATION

\* \* \*

Coverage under this policy for any car identified on the Declaration Certificate, or the entire policy, may be cancelled by us. We will mail or deliver 10 days written notice of cancellation to the Principal Named Insured. This will be sent to his/her address last known to us or our authorized agent. Any unused premium will be returned to the Principal Named Insured prorated for the unexpired time. We may collect any premium due to us prorated for the entire time the policy was effective. . . .

11. CANCELLATION BY US, LIMITED

After coverage under this policy for a car identified on the Declaration Certificate has been effective for a period of 55 days; . . . we shall issue a notice of cancellation when: (1) the Principal Named Insured or a person on his/her behalf fails to pay any premium or installment, when due.

As applied to plaintiff, this policy language is

clear. The policy was validly canceled because plaintiff received the required written notice of cancellation due to the failure to pay premiums. The fact that plaintiff may be unable to enforce this cancellation provision as to Ford Motor is not material since, for reasons to be discussed *infra,* there are no public policy considerations that justify this result.

Plaintiff relied on *Lease Car of America, Inc, supra,* for his argument that the policy was still in effect. In that case, our Supreme Court construed MCL 500.3020; MSA 24.13020, the statute requiring an insurer issuing casualty insurance policies, including motor vehicle coverage, to give ten days written notice of cancellation, as contemplating that the notice would be afforded to all parties insured under the policy. The insurance policy in that case, as in this case, only required that notice be given to a designated insured. However, our Supreme Court found that such a policy had the effect of avoiding MCL 500.3020; MSA 24.13020, and that the objective of the statute could not be achieved if the insurer only gave notice to a designated insured. The objective of the statute was described as

> to make certain that all of those who are insured under a policy are afforded a period of time, ten days, either to satisfy whatever concerns have prompted cancellation and thus revive the policy or to obtain other insurance, or simply to order their affairs so that the risks of operating without insurance will not have to be run. That objective cannot be achieved if the insurer, pursuant to policy language, need only notify a designated insured that cancellation is imminent. [*Lease Car of America, Inc, supra,* p 54.]

The party purchasing the policy in *Lease Car of*

*America,* as in this case, was a lessee of a vehicle. The lessee was given notice of cancellation due to the failure to pay premiums, but the lessor was not. Although our Supreme Court did state that the policy remained "in effect" as a result of this deficiency, the relief granted was limited to the lessor and seemed to be premised on a theory of estoppel, i.e., that the insurer is estopped from enforcing the cancellation as to those insureds who do not receive notice, rather than holding, as argued by plaintiff, that the policy remains in effect as to all insureds. The Court did not void the cancellation provision agreed to by the lessee and the insurer. The Court merely enforced the policy expressed in the statute by prohibiting the insurer from hiding behind its cancellation policy provision when faced with a claim by an insured party that did not receive proper notice.

Nor do we find any public policy considerations underlying the statute which would justify treating the policy as being in force as to all insureds, particularly where, as here, the cancellation results from the failure of the insured seeking the relief to comply with his obligation to pay premiums. Plaintiff here had notice of the cancellation and, as to plaintiff, the objective of MCL 500.3020; MSA 24.13020 was satisfied.

To summarize, we hold that a consideration of public policy, as embraced by MCL 500.3020; MSA 24.13020, does not preclude enforcement of a cancellation provision in a policy for failure to pay premiums against those insureds who receive the requisite notice of cancellation.

Plaintiff also claims that summary disposition was inappropriate because, even if the court rejected plaintiff's legal argument, the court should have recognized that questions of fact existed as to whether defendant effectively canceled the insurance policy as it pertained to plaintiff. There is

some hint in this argument that defendant should be estopped from enforcing the cancellation provision as a result of oral representations allegedly made by defendant's unidentified agents and plaintiff's confusion regarding the requirements of periodic payments and the effect of his nonpayment on insurance coverage. A motion for summary disposition under MCR 2.116(C)(10), however, tests the factual support for a claim. *Morganroth v Whitall,* 161 Mich App 785, 788-789; 411 NW2d 859 (1987). Here, defendant supported its countermotion for summary disposition with proofs establishing that the policy was validly canceled pursuant to the terms of the written insurance policy. Hence, as the party opposing the motion, plaintiff had the burden of coming forward with evidence to establish the existence of a material factual dispute. *Id.,* p 788; MCR 2.116(G)(4).

Plaintiff's proofs failed to establish any material factual issue as to the effectiveness of the cancellation. In his deposition testimony and answers to interrogatories, plaintiff admitted that he was aware of the cancellation notice but did not pay any premium in October because he was between jobs and lacked income. He also indicated that he did not make the September payment because he had been given verbal assurances that he could make two payments in October. We note that had he made two payments prior to October 8, he could have kept the policy in effect. Plaintiff's failure to revive the policy by making a premium payment by October 8, 1984, completed the cancellation of the policy. Hence, as to plaintiff, there was no policy in effect at the time of his subsequent accident. Since there was no policy in effect, plaintiff was not entitled to recover personal injury protection benefits and the trial court's grant of summary disposition under MCR 2.116(C)(10) is affirmed.

Affirmed.