CITY OF COLUMBUS, APPELLEE, V. GREGORY E. SWANSON,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND
ALLIED PROPERTY AND CASUALTY INSURANCE CO.,
THIRD-PARTY DEFENDANT, APPELLEE.

708 N.W.2d 225

Filed December 9, 2005. No. S-04-714.

Clark J. Grant, of Grant & Grant, for appellant.

Cathy S. Trent and Stephen L. Ahl, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Allied Property and Casualty Insurance Co.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The issue presented in this case is whether an automobile liability insurance policy was effectively canceled as to the named insured for nonpayment of premium. The named insured received timely statutory notice, but others having an interest in the policy did not. We agree with the district court that the cancellation was effective.

## BACKGROUND

Allied Property and Casualty Insurance Co. (Allied) issued personal automobile policy No. PPC 0009439209-0 to Gregory E. Swanson, age 19, for the policy period of October 30, 1999, to May 1, 2000. The vehicle insured under the policy was a 1984 Mercury Cougar, which Gregory had purchased with $2,500 borrowed from his father, Kenneth Swanson. A declarations page in the policy bearing an effective date of February 7, 2000, lists Gregory as the "named insured" and Kenneth as a "loss payee." An endorsement incorporated into the policy names Kenneth as a "designee." This endorsement states that liability coverage for the covered automobile applied to the designee, subject to the additional provision that Allied "will pay damages for which the designee becomes legally responsible only if the damages arise out of acts or omissions of: a) you or any 'family member', or b) any other covered person using 'your covered auto' described below with your permission." Allied regarded Kenneth as an "additional insured" under the policy pursuant to this endorsement. The vehicle was titled in the names of Gregory and his mother, Diane C. Swanson, but Diane's name does not appear on the policy, and the record does not reflect whether Allied was aware of her ownership interest when the policy was issued.

On February 7, 2000, Allied sent, by certified mail to Gregory at his residence in Lincoln, Nebraska, written notice that unless a premium payment of $216.25 was received by Allied on or before February 20, 2000, it would cancel the policy effective 12:01 a.m. on that date. The premium payment was not received prior to February 20, and Allied canceled the policy on that date. While operating the vehicle on February 25, in Columbus, Nebraska, Gregory was involved in a collision with a police vehicle owned by the City of Columbus.

The collision resulted in damage to the police vehicle in the amount of $15,605 and damage to the Mercury in the amount of $2,500. At the time of the accident, neither Kenneth nor Diane had received any notice of cancellation from Allied and they were unaware of the notice of cancellation which Allied had sent to Gregory.

On the same day that the collision occurred, Allied mailed notice of cancellation of the policy to Kenneth at his address in

Monroe, Nebraska. Kenneth received this notice on February 28, 3 days after the collision. He immediately tendered payment to Allied's agent for the premium due.

The city instituted this action against Gregory, alleging that his negligence resulted in property damage to the police vehicle in the amount of $15,605. Gregory filed a third-party action against Allied, seeking indemnification under the policy with respect to any liability he may have to the city as a result of the collision. Allied denied coverage on the ground that its cancellation of the policy for nonpayment of premium was effective 5 days before the accident occurred. Both Gregory and Allied moved for summary judgment. The district court granted Allied's motion, determining that Allied's cancellation of the policy was effective as to Gregory despite Allied's failure to provide notice of the pending cancellation to Diane as the co-titled owner or Kenneth as an additional insured. Following a bench trial, the district court entered judgment against Gregory in favor of the City of Columbus in the amount of $15,605, plus costs. Gregory perfected this timely appeal, which we moved to our docket on our own motion.

## ASSIGNMENT OF ERROR

Gregory assigns, restated, that the trial court erred as a matter of law in determining that Allied did not need to give either Diane or Kenneth advance notice to effect a valid cancellation of the Allied automobile insurance policy as to Gregory.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *NEBCO, Inc. v. Adams, ante* p. 484, 704 N.W.2d 777 (2005); *Hans v. Lucas, ante* p. 421, 703 N.W.2d 880 (2005). When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further

proceedings as the court deems just. *Channer v. Cumming, ante* p. 231, 699 N.W.2d 831 (2005); *In re Estate of Bauer, ante* p. 91, 700 N.W.2d 572 (2005).

 The meaning of a statute is a question of law. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004); *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *Stevens v. Downing, Alexander*, 269 Neb. 347, 693 N.W.2d 532 (2005).

## ANALYSIS

An insurer's right to cancel an automobile liability policy during the policy period is governed by statute. See *Glockel v. State Farm Mut. Auto Ins. Co.*, 219 Neb. 222, 361 N.W.2d 559 (1985). Neb. Rev. Stat. § 44-515 (Reissue 2004) specifies permissible grounds for cancellation, including nonpayment of premium. In February 2000, when Allied sought to cancel the policy at issue in this case, Neb. Rev. Stat. § 44-516(1) (Cum. Supp. 2000) provided:

> No notice of cancellation of a policy to which section 44-515 applies shall be effective unless mailed by registered or certified mail to the named insured at least thirty days prior to the effective date of cancellation, except that if cancellation is for nonpayment of premium, at least ten days' notice of cancellation accompanied by the reason therefor shall be given. The requirements of this subsection shall apply to a cancellation initiated by a premium finance company for nonpayment of premium.

The policy at issue in this case provided:

> **A. Cancellation.** This policy may be cancelled during the policy period as follows:
>
> . . . .
>
> 2. We may cancel by mailing by registered or certified mail to the named insured shown in the Declarations at the last address known by us:
>
> a. At least 10 days notice:
>
> 1) If cancellation is for nonpayment of premium[.]

It is undisputed that Allied gave Gregory timely notice of cancellation for nonpayment of premium prior to the accident

from which the city's claim arises. The district court concluded that because Gregory "was afforded both the time and opportunity either to pay the policy premium or to obtain other insurance," he had no coverage under the policy. It is likewise undisputed that Kenneth did not receive notice of cancellation until several days after the accident, and no notice of cancellation was ever sent to Diane. The district court concluded that while "Allied's failure to provide advance notice of the cancellation to Kenneth and Diane Swanson would result in the retention of their rights under the policy," it did not alter the cancellation of the policy with respect to Gregory. In this appeal, Gregory argues that the reasoning of the district court is contrary to the principles applied by this court in *Hansen v. U.S.A.A. Casualty Ins. Co.*, 206 Neb. 147, 291 N.W.2d 715 (1980), and *Kent v. Dairyland Mut. Ins. Co.*, 177 Neb. 709, 131 N.W.2d 146 (1964).

In *Kent*, William Kent and his 18-year-old son, Stanley Kent, were coowners of a motor vehicle which was involved in an accident while Stanley was driving. Stanley had secured insurance on the vehicle at the direction of William, although the latter did not personally participate in the transaction with the insurer. The policy specifically named both men as insureds. Prior to the accident, Stanley wrote a letter to the insurer requesting cancellation of the policy. That letter was received on the day of the accident, and the insurer contended that it resulted in cancellation of the policy effective at 12:01 a.m. on that date. Accordingly, the insurer denied coverage for claims arising from the accident which occurred later that day. After retaining counsel and negotiating a settlement of the claims against them related to the accident, the Kents brought suit against the insurer to determine the rights of the parties under the policy and to recover the sums which they expended in the defense and settlement of the claim. *Id.* At trial, William testified that he did not know that Stanley intended to cancel the policy and the insurance agent testified that he did not inform William of Stanley's cancellation. The trial court entered judgment for the Kents, and the insurer appealed, arguing that the cancellation was effective, because under the contract, Stanley was vested with authority to cancel the policy. We rejected the insurer's argument and affirmed the court's holding, reasoning that because the policy permitted cancellation by

the "named insured" and both the Kents were insured under the policy, Stanley could not cancel the policy without the knowledge or consent of William.

In *Hansen v. U.S.A.A. Casualty Ins. Co., supra,* we considered the issue of "[w]hether an insurer, before canceling the insurance covering a motor vehicle owned by several individuals, must give notice of such cancellation to all the owners even though not all the owners are shown on the face of the policy as the named insured." 206 Neb. at 147, 291 N.W.2d at 716. The insured vehicle was coowned by a husband and wife and titled in both of their names, with rights of survivorship. Only the husband was specifically listed as a named insured, but the policy specifically provided that coverage would extend to a spouse who was a member of the same household. The wife was identified in the policy as the principal operator of the insured vehicle. After the couple separated, the husband instructed the insurer to cancel the insurance on the vehicle, which was in the possession of the wife, and to notify her of the cancellation. The wife was involved in an accident after the insurer received these instructions but before it notified the wife of the cancellation. In considering the question of whether the policy remained in force so as to provide liability coverage to the wife at the time of the accident, we noted that the facts differed from those in *Kent* in that the vehicle, while jointly owned, was not jointly insured. Based upon what we viewed as compelling policy reasons against causing a motorist to become unknowingly uninsured, we held that an automobile insurer

> may not cancel the policy, either at the request of a named insured or at the company's initiative, until notice is given to all persons known to have an ownership interest in the motor vehicle, at their last known addresses, in enough time to afford them a reasonable opportunity to obtain other insurance.

*Hansen v. U.S.A.A. Casualty Ins. Co.,* 206 Neb. 147, 156, 291 N.W.2d 715, 720 (1980).

The facts of the instant case do not fall squarely within the holdings of either *Kent v. Dairyland Mut. Ins. Co.,* 177 Neb. 709, 131 N.W.2d 146 (1964), or *Hansen v. U.S.A.A. Casualty Ins. Co., supra.* Although Diane was shown as a coowner on the title

to the vehicle, this fact is not reflected in the policy, and there is nothing in the record to establish that the joint ownership was ever made known to Allied prior to the accident. Although Kenneth was an "additional insured" who did not receive notice of cancellation prior to the accident, he was not listed in the policy as a "named insured," and the city's property damage claim was not based upon his personal liability, but, rather, on that of Gregory, who did receive such notice. No claim against either Diane or Kenneth is asserted in this action. Moreover, unlike *Kent* and *Hansen*, this case involves a cancellation initiated by the insurer for nonpayment of premium, thus implicating the notice requirements of § 44-516(1).

The term "policy" as used in § 44-516(1) is defined by Neb. Rev. Stat. § 44-514(1) (Reissue 2004) as "an automobile liability policy . . . delivered or issued for delivery in this state, insuring a natural person as named insured or one or more related individuals resident of the same household." Section 44-516(1) requires that advance notice of cancellation for nonpayment of premium be mailed to the "named insured." The Allied policy specifically states that the "named insured" is the person identified as such in the policy declarations, in this case Gregory, who did not reside in his parents' household. While Gregory does not dispute the fact that he received the notice required by § 44-516(1), he contends that cancellation was nevertheless ineffective because Allied did not send advance notice of cancellation to Kenneth, who is an additional insured under the policy, and to Diane, who is not identified in the policy but was a coowner of the insured vehicle.

This argument assumes a requirement for effective cancellation which our Legislature has not seen fit to include in § 44-516(1). In *Metropolitan Property & Cas. v. Zeller*, 246 Ga. App. 637, 541 S.E.2d 433 (2000), cited by Gregory in support of his argument, the court held that an automobile insurance policy was not effectively canceled for nonpayment of premium despite the requisite notice to the insured, because the insurance company failed to send notice to the lessor, which was named in the policy as lien/loss payee. However, this result was dictated by a Georgia statute which required advance notice of cancellation " 'to the named insured *and any lienholder.* ' "

(Emphasis in original.) *Id.* at 637, 541 S.E.2d at 434, quoting Ga. Code Ann. § 33-24-44(d) (1990). The Georgia court specifically determined that the lessee was a lienholder entitled to statutory notice. The Nebraska Legislature could have conditioned effective cancellation of an automobile liability policy upon advance notice to lienholders, loss payees, additional insureds, or others having an interest in an automobile insurance policy, but it has not. Section 44-516(1) requires notice only to the "named insured," who in this case was Gregory.

Other cases relied upon by Gregory also do not support his argument that the failure of Allied to send notice of cancellation to his parents prevented cancellation of the policy as to him. The opinion in *Toyota Motor Credit Corp. v. Felton*, 305 A.D.2d 582, 760 N.Y.S.2d 510 (2003), does not refer to any statutory notice requirements. The policy covering a leased vehicle named the lessor as an additional insured and loss payee and provided that a loss payee would be given the same notice of cancellation for nonpayment of premium that is given to the named insured. It was undisputed that the lessee, who was the named insured, received notice of cancellation prior to the accident which resulted in a personal injury claim against both the lessee and lessor. The lessor settled the claim and successfully sought reimbursement under the policy, based on the fact that it had not received notice of cancellation as required by the terms of the policy. The opinion does not address the issue of whether the cancellation was effective as to the lessee who did receive the required notice of cancellation. In addition, *Accardo v. Clarendon Nat. Ins. Co.*, 751 So. 2d 975 (La. App. 2000), held that cancellation of a policy was not effective as to an additional insured who was not notified when the named insured surrendered the policy, an issue which is not presented in the instant case.

As noted by the district court, there is authority in support of Allied's argument that a breach of whatever obligation it may have had to give advance notice of cancellation to Kenneth or Diane would not affect its cancellation of the policy as to Gregory. *Pawlick v. N.J. Auto. Full Ins.*, 284 N.J. Super. 629, 666 A.2d 186 (1995), and *O'Neill v ACIA*, 175 Mich. App. 384, 438 N.W.2d 288 (1989), involved leased vehicles in which timely

advance notice of cancellation had been given to the lessee driver, but not to the lessor named as an additional insured under the policy. Both courts held that cancellation was effective as to the lessee, notwithstanding the failure of the insurer to give proper notice to the lessor. The *O'Neill* court specifically noted the absence of

> any public policy considerations underlying the statute [requiring notice of cancellation to named insured] which would justify treating the policy as being in force as to all insureds, particularly where, as here, the cancellation results from the failure of the insured seeking the relief to comply with his obligation to pay premiums.

175 Mich. App. at 390, 438 N.W.2d at 291.

Allied complied with § 44-516(1) in giving advance notice of cancellation for nonpayment of premium to Gregory as its named insured. He was thereby placed on notice that he would become uninsured if he did not pay the premium due by the specified date. When he failed to do so, the policy was canceled as to him. Because this cancellation occurred prior to the accident which gave rise to Gregory's liability to the city as determined in this action, Allied had no obligation to indemnify Gregory for that liability.

We note from the record that the city filed a separate action against Diane and Kenneth arising from the same accident, in which action the city asserted a claim based upon the family purpose doctrine. That action was voluntarily dismissed without prejudice prior to commencement of this action. Because Diane and Kenneth are not parties to this action, we express no opinion as to any rights they may have or might assert under the insurance policy in question.

## CONCLUSION

For the reasons discussed, we find no error and therefore affirm the judgment of the district court.

AFFIRMED.

CONNOLLY, J., participating on briefs.